**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARYANN LOUGHRY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-3729** |
| | : | |
| **M&T MORTGAGE CORP., PNC BANK** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **August 31, 2023**

   Congress through the Fair Credit Reporting Act defines consumers' rights to dispute inaccurate entries on their credit reports creating harm to their credit or otherwise. Congress requires persons furnishing our credit information like banks and retailers to remedy inaccurate information upon notice of a dispute provided to them by the credit reporting agencies. Failure to do so may cause the consumer credit harm and create liability, even if a relatively nominal damages amount, for the furnisher bank. Congress requires the furnisher to investigate and ensure the inaccurate information is clarified with a credit reporting agency. We today address a situation where two banks did exactly what Congress requires but may have used the wrong description. Credit reporting agencies notified two banks of a consumer's dispute with an entry on her credit reports. The banks filled out the dispute forms and notified the credit reporting agencies. The credit reporting agencies promptly corrected the consumer's reports upon notice from the banks. The consumer offers no evidence of harm caused by the banks' prompt conduct. The consumer's alleged credit denials instead arose before the banks learned of the error. We find the consumer lacks standing to pursue this claim against the banks. We further find the banks acted in a reasonable manner consistent with congressional mandates even if the consumer could somehow establish her standing. We grant the banks' motions for summary judgment.

I.      **Facts adduced in discovery.**[1]

Maryann Loughry applied for credit from several retail stores and banks from November 2019 to February 2020.[2]  Each denied extending her credit.[3]  The credit denials allegedly caused her "emotional damages."[4]  She experienced an "upset tummy" and struggled to sleep "because of stress" caused by "M&T [Bank] and the other credit agencies."[5]  She received her last denial of credit letter on February 6, 2020.[6]

Ms. Loughry requested and received credit reports from three major credit reporting bureaus on November 14, 2019.[7]  The TransUnion and Experian credit reports listed an M&T Bank account in her name.[8]  She did not have an account with M&T Bank.[9]  Ms. Loughry's TransUnion and Experian credit reports listed two PNC Bank accounts in her name.[10]  Ms. Loughry did not have an account with PNC Bank.[11]  Ms. Loughry's lawyers disputed the M&T Bank account and PNC Bank accounts with TransUnion and Experian.[12]

Ms. Loughry's lawyers acted consistent with federal law.  Congress requires consumers submit dispute letters to credit reporting agencies which in turn send automated credit dispute verification forms to the financial institutions reporting the disputed accounts.[13]  The dispute verification form details the consumer's request to the credit reporting agency.[14]  The dispute verification form includes the consumer's personal information allowing the financial institution tied to the disputed account to verify the underlying dispute.[15]  Financial institutions review the consumer's name, social security number, and date of birth against the disputed account.[16] Financial institutions then furnish the consumer's personal information and the personal information of the true account holder to the credit reporting agency allowing the credit reporting agency to delete the disputed account from the complaining consumer's credit report if inaccurate.[17]

Financial institution's submissions to the credit reporting agencies like TransUnion include a "response code."[18]   The response code directs the credit reporting agency's action to the complaining consumer's credit report.[19]   Financial institutions use different response codes depending on the consumer's dispute and the disputed account.[20]   Response Code 03 instructs the credit reporting agency to delete the disputed account.[21]   Response Code 23 instructs the credit reporting agency to update the personal information associated with the disputed account and change the disputed account's holder's name.[22]   Response Code 103 instructs the credit reporting agency to delete the disputed account as obtained through fraud.[23]   Financial institutions use response code 103 only if they prove fraud because credit reporting agencies then freeze the consumer's credit report, refuse to accept "data furnishes" from financial institutions, and prohibit the consumer from opening new lines of credit until the financial institution completes the fraud investigation.[24]

### *M&T Bank responds to Ms. Loughry's dispute.*

Ms. Loughry submitted dispute letters on February 10, 2020 (four days after her last denial letter) to TransUnion and Experian disputing the M&T Bank account's existence and inclusion on her credit reports.[25]   M&T Bank received automated credit dispute verification forms from Experian and TransUnion on February 21, 2020.[26]   M&T Bank reviewed the origination documents tied to the disputed account to verify the credit report's accuracy.[27]   M&T Bank submitted its responses on February 24, 2020.[28]   The disputed M&T Bank account belonged to "Mary Campbell."[29]   M&T Bank's submissions included Response Code 23 directing TransUnion and Experian to update the personal information on the disputed account and change the holder from "Maryann Loughry" to "Mary Campbell."[30]   M&T Bank does not use response codes

instructing the credit reporting agencies to delete the account for reasons other than fraudulent obtainment.[31]

TransUnion sent Ms. Loughry a letter on March 12, 2020 confirming it deleted the M&T Bank account from her TransUnion credit report.[32]  Experian sent Ms. Loughry a letter two days later on March 14, 2020 confirming it deleted the M&T Bank account from her Experian credit report.[33]

Ms. Loughry's credit reports have not referenced the M&T Bank account since notice to the bank.[34]  Ms. Loughry has also not applied for credit since her lawyers sent the dispute letters to TransUnion and Experian on February 10, 2020.[35]

### PNC Bank responds to Ms. Loughry's dispute.

Ms. Loughry's lawyers submitted dispute letters on February 10, 2020 to TransUnion and Experian seeking to remove the PNC Bank accounts from her credit reports.[36]  PNC Bank received automated credit dispute verification forms from TransUnion on February 16, 2020.[37]  PNC Bank reviewed the origination documents tied to the disputed account to verify the credit report's accuracy.[38]  PNC Bank submitted responses to the TransUnion dispute forms on February 24, 2020.[39]  It included Response Code 03 requesting TransUnion to delete the PNC Bank accounts from Ms. Loughry's credit report.[40]

PNC Bank received automated credit dispute verification forms from Experian on February 21, 2020.[41]  PNC Bank again reviewed the origination documents tied to the disputed account to verify the credit report's accuracy.[42]  PNC Bank responded to the Experian dispute verification forms between February 24, 2020 and March 3, 2020.[43]  Three of these responses included Response Code 03 requesting Experian to delete the PNC Bank accounts from Ms. Loughry's credit report.[44]  One of the responses included Response Code 23 requesting Experian to update

the personal information on the disputed account and change the holder from "Maryann Loughry" to "Mary Campbell."[45]

TransUnion sent Ms. Loughry a letter on March 12, 2020 confirming it deleted the PNC Bank accounts from her credit report.[46]  Experian sent Ms. Loughry a letter two days later on March 14, 2020 confirming it deleted the PNC Bank accounts from her credit report.[47]

Ms. Loughry's credit reports have not referenced the PNC Bank accounts since notice to the bank.[48]  Ms. Loughry has also not applied for credit since her lawyers sent the dispute letters to TransUnion and Experian on February 10, 2020.[49]

### Ms. Loughry sues M&T Bank and PNC Bank.

Ms. Loughry sued M&T Bank and PNC Bank for violating the Fair Credit Reporting Act by furnishing false information to credit reporting agencies and failing to investigate inaccurate information included in Ms. Loughry's credit reports.[50]  Ms. Loughry alleges she continues to suffer from stress and stomach pain owing to M&T Bank's and PNC Bank's internal processes which successfully instructed the credit reporting agencies to remove the accounts from her credit reports.[51]  Ms. Loughry argues the banks' use of Response Code 23 caused her both "tangible" and "intangible" injuries.[52]

M&T Bank counters it uses Response Code 23 when responding to clerical inaccuracies in the consumer's credit report instead of response codes requesting the account be shut down for fraud.[53]  PNC Bank counters it uses Response Code 23 when the disputed account holder is different than the person disputing their credit report.[54]  The credit reporting agencies receiving PNC Bank submissions to automated credit dispute verification forms with Response Code 23 delete the account from the complaining consumer's credit report.[55]

## II.     Analysis

PNC Bank and M&T Bank move for summary judgment on Ms. Loughry's Fair Credit Reporting Act claims.[56]  PNC Bank argues (1) Ms. Loughry lacks standing because PNC Bank's responses occurred after receiving the dispute verification forms related to Ms. Loughry's credit denial and PNC Bank's responses caused the credit reporting agencies to delete the accounts from Ms. Loughry's credit report; (2) PNC Bank's investigation procedures are "reasonable" as a matter of law because PNC Bank promptly investigated and responded to the dispute verification forms to correct Ms. Loughry's credit reports; and (3) PNC Bank could not have committed a "willful" violation of the Fair Credit Reporting Act because its investigation procedures are "reasonable" as a matter of law.[57] M&T Bank argues (1) its investigation procedures are "reasonable" as a matter of law because the investigation resulted in the deletion of the disputed account and Ms. Loughry has no damages attributable to M&T Bank's conduct; and (2) M&T Bank did not commit a "willful" violation of the Fair Credit Reporting Act because its interpretation of the statute was not "objectively unreasonable."[58]

Ms. Loughry counters the banks (as furnishers of information) violated the Fair Credit Reporting Act by submitting responses to the automated credit dispute verification forms containing Response Code 23.[59]  She argues use of Response Code 23, which requests the credit reporting agency update the information for the disputed account, creates a genuine dispute of material fact concerning whether M&T Bank and PNC Bank used "reasonable" investigative policies under the Fair Credit Reporting Act because it inaccurately attributes the account to the complaining consumer.[60]  Ms. Loughry argues M&T Bank's and PNC Bank's use of Response Code 23 to investigate consumer credit disputes creates a genuine dispute of material fact concerning M&T Bank's and PNC Bank's willful violation of the Fair Credit Reporting Act

because using Response Code 23 is not industry standard for furnishers.[61]  Her argument seems to be the banks' use of Response Code 23 violates the Fair Credit Reporting Act based on industry standards notwithstanding Congress's mandate.

We grant M&T Bank's and PNC Bank's Motions for summary judgment because: (1) Ms. Loughry lacks Article III standing as she suffered no concrete harm resulting from M&T Bank's and PNC Bank's actions because their duties under the Fair Credit Reporting Act had not accrued when she received the credit denial letters; (2) the reasonableness of M&T Bank's and PNC Bank's investigative procedures after receiving the automated credit dispute verification forms is "beyond question"; and (3) M&T Bank's and PNC Bank's responses to the automated credit dispute verification forms did not create a genuine dispute of material fact of a willful violation of the Fair Credit Reporting Act.[62]

**A.      The banks' post-notice acts did not cause Ms. Loughry concrete harm.**

Ms. Loughry argues she suffered "tangible" concrete injuries trying to fix the errors in her credit reports by requesting TransUnion and Experian to remove the M&T Bank and PNC Bank accounts from her credit reports.[63]  Ms. Loughry argues she suffered "intangible" concrete injuries caused by M&T Bank's and PNC Bank's falsely attributing the accounts to her and using Response Code 23 which states the "disputed information is accurate."[64]  Ms. Loughry cites to the United States Court of Appeals for the Seventh Circuit's decision in *Ewing v. MED-1 Sols., LLC* arguing M&T Bank's and PNC Bank's falsely listing attributing accounts to Ms. Loughry creates Article III standing.[65]  PNC Bank counters its use of "the allegedly incorrect" Response Code 23 still caused the credit reporting agencies to delete the PNC Bank accounts from Ms. Loughry's credit report.[66]

We find Ms. Loughry did not suffer concrete harm as required by Article III because M&T Bank's and PNC Bank's attribution of accounts to Ms. Loughry occurred before their duties under the Fair Credit Reporting Act accrued. Their later responses to the automated credit dispute verification forms caused the credit reporting agencies to delete the accounts from Ms. Loughry's credit report.  The dispute resolution system worked exactly as Congress intended: the consumer found a problem in her credit report, she notified her lawyers who disputed the accounts with the credit reporting agencies, the credit reporting agencies informed the banks housing the accounts, the banks responded, and the credit reporting agencies deleted the accounts from Ms. Loughry's credit reports within a month.

Congress imposes obligations on banks which furnish information to credit reporting agencies through the Fair Credit Reporting Act.[67]  Consumers trigger furnisher obligations by disputing their credit report with a credit reporting agency.[68]  Once a furnisher receives notice from a credit reporting agency of a consumer dispute, the furnisher must:

> "(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly-- (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information."[69]

Furnisher liability accrues under the Fair Credit Reporting Act only after the furnisher receives notice of the consumer's dispute of their credit report's accuracy.[70]

We cannot find a basis to find Ms. Loughry has standing absent harm caused by the banks under the Fair Credit Reporting Act. The Supreme Court recently considered Article III standing under the Fair Credit Reporting Act in *TransUnion LLC v. Ramirez*.[71]  A several-thousand-person class sued a credit reporting agency for failing to "use reasonable procedures to ensure the accuracy of their credit files" by inaccurately reporting each class member as a "specially designated national" threatening the United States' national security.[72]  The credit reporting agency transmitted a portion of the class's inaccurate credit reports to third-party businesses.[73]  The Court held the class members whose credit reports the credit reporting agency shared with third-party businesses had Article III standing because the transmission caused them reputational harm by inaccurately categorizing them as "potential terrorists."[74]  The Court held the remaining class members lacked Article III standing and noted "the mere presence of an inaccuracy in an internal credit file," without disclosure to a third-party business, "cause[d] no concrete harm."[75]  The Court compared the harm alleged by these class members to the subject of a "defamatory letter" stored in the writer's desk drawer.[76]  The Court's *Ramirez* holding expanded its 2016 *Spokeo* holding "bare procedural violations" of the Fair Credit Reporting Act do not confer Article III standing.[77]

The parties did not mention cases applying the *Ramirez* instruction in this context but we found two federal judges' thinking on how standing under *Ramirez* may affect an Article III standing analysis in claims against furnishers under the Fair Credit Reporting Act.[78]  In a case out of Texas a few months ago, the landlord reported the tenant incurred a debt during his departure and referred the account to the furnisher for collection.[79]  The tenant disputed the debt with the furnisher several times over two years.[80]  The tenant then sent a dispute letter to a credit reporting agency in June 2020.[81]  The furnisher investigated and verified the existence of the debt account.[82]  The tenant sued the furnisher alleging it sent "inaccurate" information to a credit reporting agency

causing the tenant to suffer a decreased credit score, lost credit opportunities, and "mental and emotional pain, anguish, humiliation and embarrassment of credit denials."[83]   Judge Nowak granted the furnisher summary judgment reasoning the tenant failed to present evidence the furnisher sent information about the debt <u>after</u> the tenant's June 2020 dispute letter triggered the furnisher's obligations under the Fair Credit Reporting Act.[84]   Congress has not directed denials of credit and furnishment of information to third-parties predating a tenant's dispute letter are actionable under section 1681s-2(b)(1).[85]

In the second case out of Colorado a few months ago, the father of a daughter who defaulted on her apartment lease learned his personal information appeared on his daughter's application for an apartment.[86]   The father denied applying for or living in the apartment but admitted his daughter rented the apartment.[87]   The landlord evicted the daughter and placed the defaulted lease account with a collection agency.[88]   The landlord reported the default including the father's name as defaulting on the lease account and the collection agency furnished information of the father's default to three credit reporting agencies in February 2020.[89]   The father filed several dispute letters with credit reporting agencies between June 2020 and July 2020. He later sued the furnisher alleging the reporting leading to collection of the lease account prevented him from refinancing a mortgage in June 2020.[90]   Judge Babcock granted summary judgment to the furnisher because the mortgage lender's denial of credit on a refinancing occurred before the father sent dispute letters to the credit reporting agencies.[91]

Ms. Loughry argues the United States Court of Appeals for the Seventh Circuit's decision last year in *Ewing v. MED-1 Sols., LLC* requires we find M&T Bank's and PNC Bank's pre-dispute attribution of accounts to Ms. Loughry creates Article III standing.[92]   Her reliance is plainly misplaced. The analysis in *Ewing* arose from a medical patient's disputed medical debts with a

debt collection company.[93]  The company misplaced the dispute letter and did not inform the credit

reporting agencies of the patient's dispute.  The patient sued the debt collector under the Fair Debt

Collection Practices Act arguing the Supreme Court's decision in *TransUnion* required a finding

she alleged Article III standing.[94]  The United States Court of Appeals for the Seventh Circuit

instructed "[t]hese appeals also differ from [*Ramirez*] in a significant regard—different statutes

are implicated and the subjects whom the applicable statutes aim to regulate are different."[95]

Congress imposed different requirements under the Fair Credit Reporting Act than it did under the

Fair Debt Collection Practices Act.[96]  The United States Court of Appeals for the Seventh Circuit

considered the debt collection company's violation of the Fair Debt Collection Practices Act

"clear."[97]  We are not facing the same issue under the Fair Debt Reporting Act.

Ms. Loughry fails to demonstrate she suffered concrete injury from M&T Bank's and PNC

Bank's acts after Congress defined their post-notice responsibilities under the Fair Credit

Reporting Act.  Ms. Loughry unsuccessfully applied for credit from several retail stores and banks

between November 2019 and February 6, 2020.[98]  Her lawyers submitted letters disputing the

M&T Bank account and PNC Bank accounts to TransUnion and Experian on February 10, 2020.[99]

TransUnion and Experian deleted the M&T Bank account and the PNC Bank accounts from Ms.

Loughry's credit report by mid-March 2020.[100]  Ms. Loughry claims the credit denials preceding

her dispute letters to TransUnion and Experian caused her emotional pain.[101]  Ms. Loughry has not

applied for credit since the dispute letters (and the timely responses).[102]

We see no discernible difference here between Ms. Loughry's claimed harms and those

considered by Judges Nowak and Babcock.  Both Judges Nowak and Babcock granted the

furnisher summary judgment because the furnisher's alleged acts and the adverse credit decisions

occurred before the tenant and identity theft victim submitted dispute letters to the credit reporting

agencies.[103]  We are in the same spot.  Ms. Loughry suffered credit denials before she submitted dispute letters to the credit reporting agencies.  Ms. Loughry's credit reports wrongfully included the M&T Bank account and PNC Bank accounts before she submitted dispute letters.  M&T Bank's and PNC Bank's responsibilities under the Fair Credit Reporting Act accrued only after they received the automated credit dispute verification forms from the credit reporting agencies which occurred after Ms. Loughry's credit denials and submitted dispute letters.[104]  Any harm Ms. Loughry experienced from the credit denials and inclusion of the M&T Bank account and PNC Bank accounts in her credit reports occurred before M&T Bank's and PNC Bank's responsibilities under the Fair Credit Reporting Act came due.  Ms. Loughry fails to argue how the court of appeals's *Ewing* holding, applying a different statute with a different set of requirements to a different entity, informs our decision.

We lack subject matter jurisdiction because Ms. Loughry lacks Article III standing.[105]

**B.  M&T Bank and PNC Bank acted reasonably under the Act.**

Ms. Loughery lacks standing.  But we dare venture into dicta to confirm even if we could find standing, the banks acted reasonably and did not otherwise violate the Fair Credit Reporting Act.

**1.  The banks acted reasonably.**

Putting aside her lack of standing, Ms. Loughry argues M&T Bank's and PNC Bank's use of Response Code 23 creates a genuine dispute of material fact concerning the "reasonableness" of M&T Bank's and PNC Bank's post-dispute investigative procedures because Response Code 23 inaccurately attributes the disputed accounts to the complaining consumer.[106]  M&T Bank and PNC Bank counter their post-dispute investigative procedures are "reasonable" as a matter of law because the credit reporting agencies deleted the disputed accounts from Ms. Loughry's credit

report after M&T Bank's and PNC Bank's responses to the dispute letters.[107]  Ms. Loughry cites

the United States Court of Appeals for the Eleventh Circuit's decision in *Hinkle v. Midland Credit*

*Management, Inc.* to demonstrate M&T Bank's and PNC Bank's post-dispute investigative

procedures create a genuine dispute of material fact under section 1681o.[108]

We find M&T Bank and PNC Bank engaged in "reasonable" post-dispute investigative

procedures because their investigations and responses to the automated credit dispute verification

forms prompted the credit reporting agencies to remove the disputed accounts from Ms. Loughry's

credit report even if Ms. Loughry alleged concrete injury satisfying Article III.

Congress created a private right of action to sue furnishers who "negligent[ly]" "fail[] to

comply" with the Fair Credit Reporting Act.[109]  Our Court of Appeals requires a person suing

under section 1681o show the furnisher's post-dispute investigative procedures are

"[un]reasonable" and the furnisher "failed to correct inaccurate and incomplete reporting" as to

the disputed accounts.[110]  Whether the furnisher employed "reasonable" post-dispute investigative

procedures is typically a question of fact "unless the reasonableness or unreasonableness of the

procedures is beyond question."[111]

We are guided by Judge Younge's grant of summary judgment earlier this year where the

furnisher responded within one month to a credit reporting agency's automated credit dispute

verification form to correct the disputed account information.[112]  The homebuyers obtained a

mortgage from the furnishers and remained current on their payments through April 2020.[113]  The

homebuyers entered into a forbearance agreement with the furnishers excusing the homebuyers

from making monthly payments in May, June and July 2020.[114]  The furnishers incorrectly marked

the homebuyers late on payments for these months.[115]  The homebuyers submitted dispute letters

to credit reporting agencies which in turn sent automated credit dispute verification forms to the

furnishers on August 12, 2020.[116]  The furnishers investigated the dispute and corrected the late-payment designation on the homebuyers' account on September 2, 2020.[117]  Judge Younge found the furnishers' investigation and response "timely" and their correction of the homebuyers' credit report rendered the "reasonable[ness]" of the furnishers' post-dispute investigative procedures "beyond question."[118]

Ms. Loughery urges us to follow the United States Court of Appeals for the Eleventh Circuit's 2016 holding a furnisher's choosing to ignore "dispute-related information" created a genuine dispute of material fact on the "reasonableness" of the furnisher's post-dispute investigative procedures.[119]  The furnisher purchased two "junk debts" listed under the debtor's name.[120]  Neither debt included "account-level documentation" from the debtor.[121]  The debtor disputed the debts with credit reporting agencies and the furnisher checked only its internal information and failed to verify the debtor's personal information with the junk debt sellers.[122]  The disputed accounts remained on the debtor's credit reports for nearly two years after the furnisher's investigation.[123]  The court of appeals held the furnisher's failure to review account-level documentation to verify the accuracy of the junk debts presented a genuine dispute of material fact under section 1681o requiring a trial.[124]

We are not persuaded by the reasoning applied in a widely different fact pattern in *Hinkle*. *Hinkle* involves a furnisher lacking the information necessary to investigate the disputed account holder's identity, the disputed account's status, and payment information related to the account.[125]  The *Hinkle* furnisher's failure to investigate the disputed accounts caused the accounts to languish on the debtor's credit report for two years.[126]  M&T Bank and PNC Bank adduced undisputed evidence of the origination documents tied to the accounts Ms. Loughry disputed.[127]  The banks promptly reviewed those documents to verify Ms. Loughry's connection to the disputed

14

accounts.[128]  The banks promptly responded to the dispute verification forms causing the removal of the disputed accounts from Ms. Loughry's credit reports.[129] All this in less than a month with no claimed injury in the month.

We grant M&T Bank and PNC Bank summary judgment on Ms. Loughry's section 1681o claims.  M&T Bank's and PNC Bank's post-investigative procedures are reasonable "beyond question" under the Fair Credit Reporting Act.  We are guided by Judge Younge's reasoning in *Pulley* because M&T Bank and PNC Bank acted like the *Pulley* defendants.  The furnishers in *Pulley* received automated credit dispute verification forms on August 12, 2020, investigated the disputed accounts and corrected the late payment designation on the homebuyers' account within a month.[130]  M&T Bank and PNC Bank received automated credit dispute verification forms in mid-February 2020.[131]  Both M&T Bank and PNC Bank reviewed loan origination documents associated with the disputed accounts.[132]  The credit reporting agencies deleted the disputed accounts from Ms. Loughry's credit reports by mid-March 2020.[133]  Conversely, the furnisher in *Hinkle* lacked account-level documents associated with the disputed account and failed to request them from the junk debt seller.[134]  We grant M&T Bank and PNC Bank summary judgment on Ms. Loughry's section 1681o claims.

**2.   M&T Bank and PNC Bank did not willfully violate the Fair Credit Reporting Act.**

Again putting aside her lack of standing, Ms. Loughry argues M&T Bank's and PNC Bank's use of Response Code 23 creates a genuine dispute of material fact concerning their willful violation of the Fair Credit Reporting Act because Response Code 23 is not "industry standard."[135] M&T Bank and PNC Bank counter they did not willfully violate the Fair Credit Reporting Act because their post-investigative procedures are "reasonable" as a matter of law.[136]

We find M&T Bank and PNC Bank did not violate the Fair Credit Reporting Act and provided a reasonable investigation into Ms. Loughry's dispute. Ms. Loughery offers no basis to find M&T Bank and PNC Bank willfully violated the Fair Credit Reporting Act even if she could allege Article III standing.

Our Court of Appeals defines willful violation of the Fair Credit Reporting Act as "reckless[ly] disregard[ed]" the statute's terms.[137] Judge Schwab considered a challenge to a furnisher's investigation under section 1681n as "[an] inquiry piggyback[ing] one question characteristically left to a jury onto another of the same type."[138] Our Court of Appeals instructed a furnisher's "objectively unreasonable actions with respect to a particular consumer's account" create a genuine dispute of material fact requiring a trial on the alleged willful violation.[139]

We are aware Judge Diamond denied summary judgment to a furnisher on one of three willful violation claims where the furnisher imposed a policy requiring its analysts to "[take] [no] more time than the 5 to 10 minutes allotted for investigations[.]"[140] But we again are addressing a much different fact pattern. The furnisher before Judge Diamond received three automated credit dispute verification forms after the consumer disputed with credit reporting agencies.[141] Judge Diamond granted the furnisher summary judgment on the "reasonableness" of its investigation on two of the three automated credit dispute verification forms.[142] Judge Diamond did not assess whether these two "reasonable" investigations presented a genuine dispute of material fact under section 1681n.[143] Judge Diamond found the furnisher's "5 to 10 minute[]" allotment to its analysts to conduct the investigation into the third automated credit dispute verification form presented a genuine dispute of material fact concerning the furnisher's alleged willful violation of the Fair Credit Reporting Act.[144] Judge Diamond also considered the furnisher's ultimately incorrect

submission to the credit reporting agencies when denying summary judgment as to the third automated credit dispute verification form.[145]

M&T Bank's and PNC Bank's investigation of Ms. Loughry's credit dispute is unlike the third investigation studied by Judge Diamond in *Van Veen*. Ms. Loughery offers no evidence either M&T Bank's or PNC Bank's investigations lasted less than several minutes. M&T Bank and PNC Bank submitted their responses to the automated credit dispute verification forms several days after receiving them.[146] Ms. Loughry also fails to show M&T Bank's and PNC Bank's responses to the automated credit dispute verification forms caused the credit agencies to incorrectly attribute the disputed accounts to her. The credit agencies removed the disputed accounts from her credit report within a month of M&T Bank's and PNC Bank's responses. Ms. Loughry complains M&T Bank and PNC Bank using a particular response code violates the Fair Credit Reporting Act despite the banks' responses corrected her credit reports. She got exactly what her lawyers asked for: a contemplative response from the banks leading to prompt removal of accounts she did not control from her credit report.

### III.   Conclusion

We grant M&T Bank's and PNC Bank's motions for summary judgment. We can find no genuine issue of material fact as to Ms. Loughry's lack of harm from the post-notice conduct. She lacks standing. But even if we somehow found standing, she has not adduced issues of material fact warranting a jury trial on whether the banks violated the Fair Credit Reporting Act by not acting reasonably or willfully violating the Act.

---

[1] M&T Bank appended exhibits to its motion. *See* ECF Nos. 82-3 to 82-14 ("M&T App'x"). PNC Bank, N.A. appended exhibits to its motion. *See* ECF Nos. 83-4 to 83-21 ("PNC Bank App'x").

Ms. Loughry responded and appended exhibits to her response.  *See* ECF Nos. 87-3 to 87-10; ECF Nos. 88-3 to 88-9 ("Loughry App'x").

[2] ECF No. 82-3 at 30-37 (N.T. Loughry at 29:2-36:2).

[3] *Id.*; *id.* at 36 (N.T. Loughry at 35:19-23) (discussing final denial letter).

[4] *Id.* at 68 (N.T. Loughry at 67:2-11).

[5] *Id.*

[6] *Id.* at 36 (N.T. Loughry at 35:19-23).

[7] *Id.* at 16-17 (N.T. Loughry at 15:21-16:4).

[8] *Id.* at 20, 24-25 (N.T. Loughry at 19:1-15, 23:24-24:7).

[9] *See id.* at 14 (N.T. Loughry at 13:14-17).

[10] *Id.* at 80-83 (N.T. Loughry at 79:19-82:8).

[11] *See id.* at 89 (N.T. Loughry at 88:20-89:3).

[12] *Id.* at 68 (N.T. Loughry at 67:15-22).

[13] ECF No. 82-9 at 11 (N.T. Hall at 10:13-24).

[14] *Id.* at 13 (N.T. Hall at 12:6-19).

[15] *Id.*

[16] *Id.* at 18-19 (N.T. Hall at 17:11-18:24).

[17] *Id.* at 25-26 (N.T. Hall at 24:15-25:8).

[18] *Id.* at 20 (N.T. Hall at 19:2-23).

[19] *See id.* at 83 (N.T. Hall at 82:1-12).

[20] *Id.* at 20 (N.T. Hall at 19:2-23).

[21] ECF No. 88-4 at 12-13 (N.T. Morris at 41:19-43:24).

[22] *Id.* at 13 (N.T. Morris at 45:4-21).

[23] ECF No. 82-9 at 83-85 (N.T. Hall at 82:14-84:15).

[24] *Id.*

[25] *See* ECF No. 82-3 at 38-40 (N.T. Loughry at 37:17-39:10).

[26] ECF No. 82-9 at 75-76, 77-78 (N.T. Hall at 74:24-75:9, 76:5-77:2); *see* ECF No. 82-9 at 75-76 (N.T. Hall at 74:24-75:9) (reviewing information from Experian); ECF No. 82-9 at 76-77 (N.T. Hall at 75:20-77:2).

[27] *Id.* at 60-61 (N.T. Hall at 59:11-60:6).

[28] *Id.* at 76-77 (N.T. Hall at 75:20-77:2).

[29] ECF No. 82-3 at 14 (N.T. Loughry at 13:10-13).

[30] *See* ECF No. 82-9 at 58-59 (N.T. Hall at 57:19-58:18).

[31] *Id.* at 83 (N.T. Hall at 82:1-12) ("So there is no option to just delete.  There is only an option to delete due to fraud.  This is not a case of fraud.").

[32] ECF No. 82-3 at 44-47 (N.T. Loughry at 43:19-46:10). *See also* ECF No. 82-12 at 5 (showing deleted account from M&T Bank).

[33] ECF No. 82-3 at 47-50 (N.T. Loughry at 46:18-49:4). *See also* ECF No. 82-13 at 2 (showing deleted account from M&T Bank).

[34] *See* ECF No. 82-3 at 46-47 (N.T. Loughry at 45:16-46:1); ECF No. 82-3 at 50 (N.T. Loughry at 49:1-4).

[35] *Id.* at 52 (N.T. Loughry at 51:7-9).

[36] *See id.* at 89-90 (N.T. Loughry at 88:20-89:11).

[37] ECF No. 83-11 at 2.

[38] ECF No. 88-4 at 12, 17 (N.T. Morris at 41:16-43:12, 58:21-60:8).

[39] ECF No. 83-11 at 2-3.

[40] *Id.*

[41] ECF No. 83-15 at 2; ECF No. 83-16 at 2; ECF No. 83-17 at 2; ECF No. 83-18 at 2.

[42] ECF No. 88-4 at 12, 17 (N.T. Morris at 41:16-43:12, 58:21-60:8).

[43] ECF No. 83-15 at 2; ECF No. 83-16 at 2; ECF No. 83-17 at 2; ECF No. 83-18 at 2.

[44] ECF No. 83-15 at 2; ECF No. 83-16 at 2; ECF No. 83-18 at 2.

[45] ECF No. 83-17 at 2.

[46] ECF No. 83-12 at 5.

[47] ECF No. 83-19 at 2.

[48] *See* ECF No. 82-3 at 46-47 (N.T. Loughry at 45:16-46:1); ECF No. 82-3 at 50 (N.T. Loughry at 49:1-4); ECF No. 82-3 at 102-03 (N.T. Loughry at 101:23-102:6).

[49] *Id.* at 52 (N.T. Loughry at 51:7-9).

[50] ECF No. 21 at 14-17 (Am. Compl. ¶¶ 93-118).

[51] ECF No. 82-3 at 68 (N.T. Loughry at 67:2-11).

[52] ECF No. 88 at 15, 22, 23-24.

[53] ECF No. 82-9 at 25-26, 83 (N.T. Hall at 24:22-25:14, 82:1-12).

[54] ECF No. 88-4 at 13 (N.T. Morris at 45:4-21).

[55] ECF No. 83-2 at 19-20.

[56] ECF No. 82; ECF No. 83.  Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[57] ECF No. 83-2 at 11-22.

[58] ECF No. 82-2 at 13-18.

[59] ECF No. 87 at 12-15; ECF No. 88 at 10-13.

[60] ECF No. 87 at 15-21; ECF No. 88 at 13-18.

[61] ECF No. 87 at 21-24; ECF No. 88 at 18-20.

[62] M&T Bank did not challenge Ms. Loughry's Article III standing in its Motion for summary judgment.  ECF No. 82.  We may raise subject matter jurisdiction at this stage of the litigation. *Bock v. Pressler & Pressler, LLP*, 658 Fed. App'x 63, 64 (3d Cir. 2016).

[63] ECF No. 88 at 22.

[64] *Id.* at 15, 23-24.

[65] *Id.* at 22-24.

[66] ECF No. 83-2 at 30.

[67] 15 U.S.C. § 1681s-2.

[68] 15 U.S.C. § 1681i(a)(2); 15 U.S.C. § 1681s-2(b)(1).

[69] 15 U.S.C. § 1681s-2(b)(1)(A)-(E).

[70] *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011).

[71] 141 S. Ct. 2190 (2021).

[72] *Id.* at 2200, 2201.

[73] *Id.* at 2200.

[74] *Id.* at 2208-2209.

[75] *Id.* at 2210.

[76] *Id.*

---

[77] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

[78] *Onosode v. Equifax Info. Servs.*, No. 20-951, 2023 WL 2783263 (E.D. Tex. Mar. 29, 2023), report and recommendation adopted sub nom., *Onosode v. Equifax Info. Servs.*, LLC, No. 20-951, 2023 WL 3060790 (E.D. Tex. Apr. 22, 2023); *Ward v. Trans Union LLC*, No. 21-2597, 2023 WL 4330849 (D. Colo. May 12, 2023).  In fairness, counsel may not have been aware of these decisions (then of recent vintage) when they briefed the banks' summary judgment motions in April and May 2023.

[79] *Onosode*, 2023 WL 2783263 at *6.

[80] *Id.*

[81] *Id.* at *7.

[82] *Id.*

[83] *Id.* at *1.

[84] *Id.* at *8.

[85] *See id.* at *10 ("Stated differently, the [credit] inquiries referenced by Plaintiff cannot confer standing as to the June 2020 Dispute, since the inquiries occurred long before [the furnisher's] [Fair Credit Reporting Act] duty accrued.").  "No summary judgment evidence shows Plaintiff suffered any loss or denial of credit or increased cost of credit [after the June 2020 dispute]."  *Id.*

[86] *Ward v. Trans Union LLC*, No. 21-2597, 2023 WL 4330849 (D. Colo. May 12, 2023).

[87] *Id.* at *2.

[88] *Id.*

[89] *Id.*

[90] *Id.* at *2, 4.

[91] *Id.* at *6 ("There is no evidence to suggest that Plaintiff's credit report was pulled by a potential lender or that he was denied credit (or received less favor terms) after the [credit reporting agencies] notified [the furnisher] . . . .").

[92] 24 F.4th 1146 (7th Cir. 2022).

[93] *Id.* at 1149.

[94] *Id.* at 1149-1150.

[95] *Id.* at 1153.  Plaintiff did not disclose she relies on a case under a different statute with different purposes.

[96] *Id.*

[97] *Id.*

[98] ECF No. 82-3 at 30-37 (N.T. Loughry at 29:2-36:2); ECF No. 82-3 at 36 (N.T. Loughry at 35:19-23).

[99] *Id.* at 68 (N.T. Loughry at 67:15-22).

[100] *Id.* at 44-47 (N.T. Loughry at 43:19-46:10); ECF No. 82-12 at 5 (showing deleted account from M&T Bank); ECF No. 82-3 at 47-49 (N.T. Loughry at 46:18-48:24); ECF No. 82-13 at 2 (showing deleted account from M&T Bank); ECF No. 83-12 at 5; ECF No. 83-19 at 2.

[101] ECF No. 82-3 at 68 (N.T. Loughry at 67:2-11).

[102] *Id.* at 52 (N.T. Loughry at 51:7-9).

[103] *See Onosode v. Equifax Info. Servs.*, No. 20-951, 2023 WL 2783263, at *10 (E.D. Tex. Mar. 29, 2023), report and recommendation adopted sub nom. *Onosode v. Equifax Info. Servs.*, LLC, No. 4:20-CV-951, 2023 WL 3060790 (E.D. Tex. Apr. 22, 2023) ("Stated differently, the [credit] inquiries referenced by Plaintiff cannot confer standing as to the June 2020 Dispute, since the inquiries occurred long before [the furnisher's] [Fair Credit Reporting Act] duty accrued."); *see Ward v. Trans Union LLC*, No. 21-2597, 2023 WL 4330849, at *6 (D. Colo. May 12, 2023) ("There is no evidence to suggest that Plaintiff's credit report was pulled by a potential lender or that he was denied credit (or received less favor terms) after the [credit reporting agencies] notified [the furnisher] . . . .").

[104] ECF No. 82-9 at 77-78 (N.T. Hall at 74:24-75:9, 76:5-77:2); *see* ECF No. 82-9 at 75-76 (N.T. Hall at 74:24-75:9) (reviewing information from Experian); ECF No. 82-9 at 76-77 (N.T. Hall at 75:20-77:2); ECF No. 83-15 at 2; ECF No. 83-16 at 2; ECF No. 83-17 at 2; ECF No. 83-18 at 2.

[105] Ms. Loughry's responses to M&T Bank's and PNC Bank's Motions for summary judgment argue the banks' use of Response Code 23 caused Ms. Loughry harm despite the credit reporting agencies deleting the accounts from her credit report.  ECF No. 87 at 1; ECF No. 88 at 1-2.  Even assuming use of Response Code 23 violates the Fair Credit Reporting Act, Ms. Loughry's disagreement with the form of M&T Bank's and PNC Bank's corrective action to Ms. Loughry's credit disputes and ignorance of the result is the type of behavior the Supreme Court discouraged in *Spokeo*.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016) ("On the other hand, [Fair Credit Reporting Act plaintiffs] cannot satisfy the demands of Article III by alleging a bare procedural violation.").

[106] ECF No. 87 at 15-21; ECF No. 88 at 13-18.

[107] ECF No. 82-2 at 15; ECF No. 83-2 at 18.

[108] ECF No. 87 at 16-17; ECF No. 88 at 14-15.

[109] 15 U.S.C. § 1681o(a).

[110] *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014).

[111] *Id.* at 864-65.

[112] *Pulley v. Sterling Bancorp*, No. 20-6109, 2023 WL 2692386 (E.D.P.A. Mar. 28, 2023).

[113] *Id.* at *1.

[114] *Id.*

[115] *Id.*

[116] *Id.* at *3.

[117] *Id.*

[118] *Id.* at *4.

[119] *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1306-1307 (11th Cir. 2016).

[120] *Id.* at 1298-1299.

[121] *Id.* at 1298-1299.

[122] *Id.* at 1303.

[123] *Id.* at 1299-1300.

[124] *Id.* at 1306.

[125] *Id.* at 1298-1299, 1303.

[126] *Id.* at 1299-1300.

[127] ECF No. 82-9 at 60-61 (N.T. Hall at 59:11-60:6) (reviewing the origination documents held by M&T Bank); ECF No. 88-4 at 12, 17 (N.T. Morris at 41:16-43:12, 58:21-60:8) (reviewing the origination documents held by PNC Bank).

[128] *Id.*

[129] *See* ECF No. 82-12 at 5 (showing deleted M&T Bank account from TransUnion credit report); ECF No. 82-13 at 2 (showing deleted M&T Bank account from Experian credit report); ECF No. 83-12 at 5 (showing deleted PNC Bank accounts from TransUnion credit report); ECF No. 83-19 at 2 (showing deleted PNC Bank accounts from Experian credit report).

[130] *Pulley v. Sterling Bancorp*, No. 20-6109, 2023 WL 2692386, at *1-3 (E.D.P.A. Mar. 28, 2023).

[131] ECF No. 82-9 at 77-78 (N.T. Hall at 74:24-75:9, 76:5-77:2); *see* ECF No. 82-9 at 75-76 (N.T. Hall at 74:24-75:9) (reviewing automated credit dispute verification forms from Experian and TransUnion to M&T Bank). ECF No. 82-9 at 76-77 (N.T. Hall at 75:20-77:2). ECF No. 83-11 at 2 (receiving automated credit dispute verification forms from TransUnion to PNC Bank). ECF No. 83-15 at 2; ECF No. 83-16 at 2; ECF No. 83-17 at 2; ECF No. 83-18 at 2 (receiving automated credit dispute verification forms from Experian to PNC Bank).

[132] ECF No. 82-9 at 60-61 (N.T. Hall at 59:11-60:6) (reviewing the origination documents held by M&T Bank); ECF No. 88-4 at 12, 17 (N.T. Morris at 41:16-43:12, 58:21-60:8) (reviewing the origination documents held by PNC Bank).

[133] *See* ECF No. 82-12 at 5 (showing deleted M&T Bank account from TransUnion credit report); ECF No. 82-13 at 2 (showing deleted M&T Bank account from Experian credit report); ECF No. 83-12 at 5 (showing deleted PNC Bank accounts from TransUnion credit report); ECF No. 83-19 at 2 (showing deleted PNC Bank accounts from Experian credit report).

[134] *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016).

[135] ECF No. 87 at 21-24; ECF No. 88 at 18-20.

[136] ECF No. 82-2 at 13-18; ECF No. 83-2 at 11-22.

[137] *Seamans v. Temple Univ.*, 744 F.3d 853, 867-68 (3d Cir. 2014) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)); 15 U.S.C. § 1681n(a) ("Any person who willfully fails to comply with any requirement imposed under [the Fair Credit Reporting Act] with respect to any consumer is liable to that consumer . . . .").

[138] *Meyerl v. Carrington Mortg. Co.*, No. 16-27, 2016 WL 8794477, at *2 (W.D. Pa. Dec. 7, 2016).

[139] *Seamans*, 744 F.3d at 868.

[140] *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 610 (E.D. Pa. 2012).

[141] *Id.* at 606-609.

[142] *Id.* at 607-609.

[143] *See id.* at 610.

---

[144] *Id.*

[145] *Id.*

[146] ECF No. 82-9 at 60-61 (N.T. Hall at 59:11-60:6) (describing the timing of M&T Bank's response to the automated credit dispute verification forms); ECF No. 83-15 at 2; ECF No. 83-16 at 2; ECF No. 83-17 at 2; ECF No. 83-18 at 2.